City of Calumet City 17-0236 Thank you. Would the attorneys to approach the podium please? Just as a reminder, the microphone is only for recording purposes. It doesn't amplify the voice. If you could please state your names and the parties you represent. Carrie Lynn Crafterford, Appalachian Thaddeus Jones Burt Ness Odelson, the City of Calumet City Okay. Alright, 15 minutes apiece. You want to save time for rebuttal? Five. Five? Okay. Thank you, Your Honor. Good morning. Good morning. It is Thaddeus Jones' position that Calumet City spun a rather tangled web when it placed a politically divided referendum, which was designed to keep him off the ballot for the April election. And it's going to be hard to untangle all of the components of that web in my time, but I'll try. So there are four fundamental problems with the city's referendum. The first is that simply calling something a term limit doesn't make it a term limit. So when the city decided to bar people from running for mayor who've never held the office of mayor before and called that a term limit, it's not a term limit. It's actually a prohibition from ever holding office. So what is it that we have here if it's not a term limit? That's what the referendum was about, wasn't it? Well, that's what it purports to be about, but one of the problems is that it was bifurcated. So to the extent that it wanted to bar people who previously served as mayor from serving as mayor again, that's a term limit. But to the extent that it wants to bar people who have never held the office of mayor from ever holding that once, it's actually an eligibility requirement that's amending the municipal code. There are two different sections of the Illinois municipal code that address eligibility requirements for municipal officers, and some of them have affirmative requirements, like you have to be a resident and an affirmative voter. Some of them have prohibitions. You can't have indebtedness and you can't be a convicted felon. So this is actually saying you cannot run for mayor if you've previously held four consecutive terms as mayor. What is in the argument here that it provides an opportunity for others that have not had an opportunity to serve in the city government? That is what the city is arguing. However, that argument fails for several reasons. If they are going to impose a legitimate term limit under the Constitution, it still has to pass constitutional muster, and it still has to have a rational relationship to a legitimate governmental interest. In this instance, this question doesn't do that for several reasons. First of all, when you look at the question, it would be a legitimate interest if you want to bar long-entrenched incumbents from continuing to hold political office. I agree that that would be a legitimate objective. However, this referendum didn't do that for three reasons. First of all, it cherry-picked the offices here. It says, okay, if you've held four consecutive terms as alderman, you can't run for mayor. It doesn't say if you've held four consecutive terms in any governmental office, you can't run for any other governmental office. It doesn't say if you've held four consecutive terms as mayor that you can't run for alderman. If, for example, the question would have been, should the City of Calumet City bar anyone who has served in office for more than 16 years, then arguably that would have a cohesive structure for imposing a term limit. This doesn't do it. So the first reason is they cherry-picked. The second is it was arbitrary. And this is your rational basis argument? Yes. And so in rational basis argument, does the government entity have to pick a certain choice that they had or what you view as the better one for it to violate the rational basis? No. They don't have to choose the best possible thing, but they have to do something that's not arbitrary and unreasonable. So the first reason this was arbitrary and unreasonable is because it only targeted that, like, two different particular, well, I'm challenging the second point, just the alderman not being able to ever serve for mayor. Serving zero terms for mayor is not a term limit. But the second reason that it's arbitrary and capricious has to do with the use of the term consecutive. What does that mean in this instance? When you look at the question, and one of our arguments is that the question is void because it's so ambiguous, it says you cannot have four consecutive terms as mayor or alderman. Well, what if you were two terms as alderman and then two terms as mayor? Is that prohibited by this, or does the language only prohibit the four consecutive terms in one of those particular offices? But the other problem with this is that, and so presuming the goal is to prevent long-intentioned incumbents from continuing to hold office, what if you had someone that served two terms as alderman or three terms as mayor and then took a year off and then served another three terms as mayor and then took a year off and then served another three years as mayor and then took off? That person's not prevented from running for mayor for all those terms under this particular language because of the use of the term consecutive. So in addition to not knowing whether or not you're supposed to add consecutive terms in each of the different offices together, it doesn't prevent long-term intents incumbents from holding office. But these aren't just in particular offices. I mean, we're talking about in the municipality the executive, which is the mayor, and then the legislative, which is the city council. And from the referendum, it appears that they want to have an opportunity for other people to be able to serve in the executive as well as the legislative in this instead of having people running over and over and over and over again and not providing people with an opportunity to be able to fill those positions. That is the articulated goal that the city is saying that they are striving to accomplish. However, in this instance, it's pretextual because it does not accomplish that goal. It only accomplishes it in one very narrow instance. So it doesn't say that if you have held any legislative office in any executive office for 16 years, you cannot seek another one. It's the use of the term consecutive that poses a problem, and it is the fact that they have just ñ they were specifically trying to target Mr. Jones because he is the only person in this election that they barred from running from office under here. And that's why the next arbitrary part is they picked four consecutive terms in either of those offices. If that's what it's saying, and we don't know if it's both offices because of the way that it's worded, but the incumbent mayor had served as clerk and then three terms as mayor, and she wasn't barred. So they picked the four terms consecutively as an arbitrary basis also, and it was designed specifically to target Mr. Jones. So the first problem is that they didn't really impose a term on it. The second problem is that it doesn't pass constitutional muster. But the other issues that they have here is that they combined questions in this instance. So they combined what would have been a legitimate term limit with respect to the office of mayor and previous service as mayor with this eligibility requirement that you can't serve any terms as mayor if you've previously served as alderman. So let me ask you this question. What if the referendum had said that if you served four consecutive terms as alderman, you can't run for mayor? Four consecutive terms as alderman, you can't run for mayor? Mm-hmm. Only that question, that is what the question asks. It's saying if you've served probably. You seem to say there's two questions. What if, and they were cherry picking. Okay, so what they did is they combined the legitimate term limit. Can you serve as mayor if you serve four consecutive terms as mayor? That probably would have been a legitimate term limit by itself. But they put in the same question, or if you've also served four consecutive terms as alderman. And from the way that the, here, this is specifically what the last part of the question says. No person shall be eligible to seek election to or hold the office of mayor where that person has held the elected office of either mayor or alderman of the city of Calumet City for more or more consecutive full four-year terms. So they lumped those together. And a voter coming to vote, those are unrelated questions really. While they fall under the umbrella of a term limit, it did not fall together in a cohesive scheme of a term limit for the reasons I've discussed previously. But also you could have a voter who would think, hey, yeah, we should have term limits with the office of mayor. If you've served in that particular office for four terms, you shouldn't be able to serve in that office again. But that same voter could also think, well, but if you've been in the legislative branch for four terms and you've never served in the executive branch, they may have wanted to vote differently on that. So this is trying to present a cohesive scheme, but it doesn't present a cohesive scheme. And it falls into a trap. And the Johnson v. Ames case is not dispositive on this issue. And it's interesting because this panel has two-thirds of the people that were on the original Johnson v. Ames decision, and I know you took different positions on it. And I would say that bolstering on Justice Lampkin's dissent in the Johnson v. Ames case, that was flawed because it did not say whether or not it was applied proactively or retroactively. But there are other components of this that render this question infamously vague. Well, you say that they're not related, but aren't they actually very related? Because number one, you're saying should the mayor's office, the term that you serve in the mayor's office, be limited? If so, then this is the limitation that we're requiring. Well, basically that's what the second question is. So aren't they related? Because basically it's not like you're saying should the office of comptroller be limited in terms of the number of years he could serve? And then addressing the mayoral position, basically asking the voter, number one, should we put a limit on how long a person should serve as mayor? And that limit should be four years. Well, they are related, but in the Coalition for Political Honesty case where it prohibits the combination of related cases, it goes beyond just having questions that are somehow related. They also have to be striving to solve a legitimate governmental interest. And here the way that they've done it is overly broad. It actually maybe is overly narrow in the way that they've done it because they only have limited certain things. So just because something is arguably related to service in office doesn't fall sufficiently under that umbrella in the Coalition for Political Honesty case. But the other two reasons bring back to why it's void for being vague. It's not only the issue that was raised in the Johnson v. Ims case. It's also the question of the consecutive service, what that means. You can't tell by reading this often, by reading this language, if someone served two terms as mayor and then two terms as alderman and those were all consecutive. Does that fire the person from running for mayor? Or what if they served four terms as mayor but that was eight years ago? Is this now a prohibition? Or does that break the consecutive service for the new purpose? So there are additional flaws in the particular way that this language is crafted. So it leads to arbitrary results. So in this instance, the city is saying, well, you know what, the court really shouldn't disturb this because the electorate approved it. So in that instance, this is really what the people of the city wanted. But there are some limits to direct democracy. So if the people in the village said, hey, no lawyer should ever be able to serve in office, and there might be some very good reasons for that, that is not something that is actually permitted as a term limit under the Constitution. So the first problem is that something is not a term limit just because it's called a term limit. This doesn't fulfill that. The second problem is that this is not reasonably related to any kind of governmental interest. The third problem is that it combined the two questions. The fourth problem is that it's void and ambiguous for several different reasons that I've discussed. And then the fifth problem also is this whole issue about whether or not it's prospective or retroactive in application. And to the extent that it now is going to impose a requirement that people cannot run for office in the future based on their past service, people didn't have any notice of that until now. So if somebody actually, their life goal was to seek the office of mayor, and it's very common in Illinois for people to use different positions in municipal government to work their way up to a higher office. In this particular instance, someone could be banned from seeking the office of mayor because they ran for alderman, and perhaps they never would have run for alderman if it was going to block them from doing that. So it's prospective. If it is supposed to be counting prior service, that is another problem with it. So for all of these reasons, we believe that the referendum, as it was submitted to the voters, is improper, was not supported by any lawful authority that the city could accomplish even by referendum of voters, and that it should not have been submitted to the voters in the election. So therefore, it should be vacated, and it should not be used in the future as an impediment to bar candidates from running from office if they have at least with respect to the service of the alderman in four consecutive terms, if they satisfy that criteria. I'm not challenging it to the extent that it would bar four terms as village president, but it's still the problem with the use of the word consecutive in there that poses all of these problems that have gained constitutional infirmities. Thank you. Good morning, Your Honors. Good morning. May it please the Court. I'd like to address two points before I get into my real argument that was somewhat neglected by Appellant. She initially referred to this as a city council initiative in law. The city council didn't pass the law. The people of the city of Calumet City passed the law by an overwhelming majority, 9,000 people, so 65% of the people who voted on this question voted for this law. It is an exercise of self-government of the people of the city of Calumet City. The other thing that was skipped over was the intervening acts of Mr. Jones. Mr. Jones, after his appeals had basically run out, this Court denied putting this case on the accelerated docket on February 1st. All the federal litigation, both before Judge Gettleman and the Seventh Circuit, had been basically exhausted. We were in the federal district court. We were in the United States Court of Appeals. We went back to the federal court. All requests for relief had been denied. Alderman Jones abandoned his run for mayor and filed as a voting candidate at the April election to run for alderman, to reclaim his old seat. When he did that, his appeal of him being removed from the ballot as the mayoral candidate because of the referendum was held moot by Judge Cody Soffman, the judge who rendered the underlying decision in this case. When he abandoned his run for mayor and chose to run for alderman, he got votes. He got over 100 votes. He lost for alderman in the April municipal election, but he got votes. So what is he doing now? He's asking this Court. And that's the other point I wanted to hit very hard, and we mentioned it in the first part of our brief. He's now asking that this panel void not only the November referendum election, void the February primary election, void the April municipal election, and fourthly, hold a special election. That's the relief they're asking for, all after Alderman Jones made a calculated decision and filed papers to run as an alderman, abandoning his run for mayor. We don't get two bites at the apple in the same election. He decided to abandon his mayoral run and run for alderman. He lost for alderman. Case is over. Judge Hoffman ruled that way and would not hear the appeal of his mayoral removal of the ballot because he had made an election to run for alderman. So you can't do a do-over once you've run and you've lost in that election. This is a measure, this referendum question, of general applicability and complies with Article 7, Section 6F of the Constitution. We have two constitutional provisions in play. We have Article 7, Section 6F, and we have Article 3, Section 3, the all elections shall be free and equal. Communities like Calumet City, which is a whole rural community, may subject to referendum approval and allow the citizens to adopt, alter, or repeal their specific form of government, and at the same time provide for its officers, its manner of selection, and its terms of office. That's what the Constitution says. But the argument here is that the referendum is ambiguous. It creates an ambiguity and it doesn't really clearly set out what it's intending to accomplish. And the free and equal clause of the Constitution and the Johnson v. Ames and the Coalition for Political Honesty cases take care of the answer to that. Because the question that the courts have asked, both the appellate and the Supreme Court, are they separate and unrelated questions combined into a single proposition without a common objective? If it is, then it is. It's a bad question. But if it has a common objective, you can ask multiple questions within one referendum question. And that's exactly what happened in Johnson v. Ames. That's what happened in this matter. And that's what happened in a Country Club Hills referendum case, where Judge McClain, the circuit court, upheld the Country Club Hills referendum a number of years ago, which had multiple questions listing mayor, city clerk, treasurer, and alderman, and the maximum number of terms that they could run. So it's clear now, after the Coalition case and after Johnson v. Ames, that you can have multiple questions as long as they relate to a single topic. Mr. Jones is saying that the question improperly combined two separate questions that are not reasonably related. We submit, as Judge Cody Hoffman found, that they are very related. First, you have the question as to should the mayor's office be term limited? Second, who it applies to, the eligibility requirement. And let me also note, plaintiffs here, before Johnson v. Ames came down to the Supreme Court, their argument was because the term limits were an eligibility requirement that the city, through its electorate, could not change the eligibility requirements found in the statute. Johnson v. Ames talked about eligibility requirements at least twice in the decision and found that term limits is, in fact, an eligibility requirement that the people, through referendum, could sustain. Most propositions have multiple issues and can be broken into simpler parts. You could have a referendum, just should we term limit the mayor? Then you could have another referendum, should we just term limit the alderman? But the law, again, through Coalition for Political Honesty and through Johnson v. Ames, says that if there is a common objective, you can't put multiple questions within one referendum. But what about this referendum where, what if you do agree that your mayor should be limited in terms of how many terms they can serve? But then, as to the second part, what if you disagree with that? This referendum doesn't allow for voters to say yes to one and no to the other. That's correct. They have to answer yes, they want to term limit it, and yes, this is the procedure that they wish to do. You could have done it that way. You could have had a separate referendum. Then we wouldn't be here. Then we wouldn't be here. Well, maybe we still would have, because of the political climate in Calumet City. But you could have done it that way, but Johnson v. Ames tells us you don't have to. Coalition also said that there has to be some scheme to wrap it all up together so that it all makes sense. The people could have voted no. In fact, 34% of the people did vote no. 4,000 people did vote no, and they voted no either because they didn't want term limits, or they didn't want the mayor to be term limited, or they didn't want the alderman to be term limited. And they voted no, and they have that right. The Richardson v. Leibovitz case, a third district appellate court decision in 1994, which we cited, had the issue where the county of Rock Island put a proposition on the ballot, and that proposition had two questions with it. The creation of county government using an executive form of government and taking away home rule within the same question. The appellate court said there was a cohesive scheme. All components in that question related to the same common objective. It was okay. So I don't think there's any question after Johnson v. Ames that the free and equal clause is not violated in this case. As articulated by Judge Coulis-Hoffman in the appeal below. The vague and ambiguous question is also answered by Johnson v. Ames because of breaking it down, as Justice Reyes just commented. The first question, should the office of mayor be subject to new eligibility requirements on or after April of 2017? Question two defines the requirements as barring four-term aldermen or four-term mayors from seeking office. Those are the two questions within the referendum question. Both clauses, both of those clauses work together to create a complete and coherent eligibility scheme for anyone who's interested in running for mayor. So you know in Calumet City, if you want to run for mayor, you cannot have been an alderman for four consecutive terms. You cannot have been mayor for four consecutive terms. Why the mayor and the alderman? They are the city council. The mayor is part of the city council. The treasurer and the clerk are not. They hold ministerial positions, not executive, not legislative. There was mention in the briefs about the ex post facto violation, and Johnson clearly holds that altering eligibility requirements for candidates in future elections has no retroactive impact and no ex post facto violation. This question was certainly self-executing. The government didn't have to do anything after the referendum. It stands on its own, so it's certainly not vague or ambiguous. As to the vagueness, council has suggested that it's not clear whether the four consecutive terms could be divided between the two offices. So these are one term and alderman and three consecutive, all consecutive. Is that how it could be read? No. If you just read the plain language, and that's what the courts are required to do, if you can make it out from the plain language, you don't have to go beyond that. In the plain language of the referendum, clearly, very clear English language says four consecutive terms is alderman, four consecutive terms is mayor. That's what it says. Lastly, I'd like to speak to the rationally related to a legitimate governmental interest question. This referendum question, as far as term limits, certainly goes to the very core of running the government and who's going to run your government and for how long they're going to run the government. It bars long-time aldermen and long-time mayors from seeking the office of mayor. Simply, that's what it does.  The law need not be the best means of accomplishing the legislature's objectives, but if any conceivable basis for finding a rational relationship exists, the law should be upheld. That's, again, at page 7 of Judge Hoffman's decision, and also as talked about in our brief, Judge Gellman in the federal court, which we reference in our brief, found there was a rational basis for this very referendum question and that the referendum has a general applicability. It is not targeted at Alderman Jones. Alderman Jones chose to bring the action, but two other aldermen were term limited out with the same proposal. Alderman Manisopoulos and Alderman Laney both were four-termers or more. The mayor herself is term limited out after this term. She was elected. She's serving her fourth term. She cannot run after this, so he can say, and he tried to say in federal court, and it didn't hold water before Judge Gellman or the Seventh Circuit, that he's a class of one. He certainly is not a class of one. That's just not the truth. Sometimes laws are passed. I'm speaking to that point. Sometimes laws are passed with individuals in mind. And I just would mention the recall provision passed by the people of the state of Illinois because of what happened with Governor Bogorovic. That law was put on the ballot by the General Assembly because of Governor Bogorovic. That law was passed by the people of the state of Illinois and now appears in Article 3, Section 7. It is the only recall provision in the state. You can only recall a governor of the state. So it was passed with someone specific in mind, but there's no prohibition to doing that as long as it holds constitutional muster. There's no fundamental right to run for office. There's no suspect classification challenge here, race or gender. And the irrational argument basis used by the plaintiff in reference to the referendum draws us to the test to be applied here, and that's the rational basis test. Your Honors, this was a well-reasoned decision by Judge Coulias-Hoffman. It was certainly based on Johnson v. Angs. And like Johnson v. Angs or not, it is the law of the land. It is a reasonable law of the land. We may ask that you affirm Judge Coulias-Hoffman's decision. Thank you. Thank you. And just briefly in response, first of all I just want to address some of the misrepresentations that counsel has just brought before the court. First of all, before the vote, 30th Jones was not kept off of the ballot because he decided to run for alderman instead of mayor. He was solely kept off the ballot because this referendum barred him from running for mayor. So the electoral board held that he was barred from running for mayor because he had previously won four consecutive terms as alderman. So it was a misrepresentation to say that he was kept off the ballot because he switched. We are seeking to have the referendum deferred early. I understood the argument to be that it was mooted in the circuit court because he ran for alderman, not that he was barred because he ran for alderman. Well, he didn't change. I believe the timing was that he didn't change what he was running for until after the circuit court had already ruled on that issue. I don't believe that was addressed in the circuit court. But the ineligibility was determined to be based solely on the referendum. The second thing that was misrepresented is that he just said that the Seventh Circuit held that there was not a class of one. This case remains pending before the Seventh Circuit. We've had oral arguments and they have not yet ruled. So that was a misstatement. The other and I guess final area of confusion with what counsel just raised, there's nothing in the Johnson v. Ames case that talks about commingled questions at all. That question that was before the court, and I'll read it, shall the terms of office for those persons elected to the office of village president in the village of Broadview at the April 4, 2017, consolidated election and at each election for said office thereafter be limited so that no such person shall be eligible to seek election to or hold the office of village president where that person has previously been elected to the office of village president of the village of Broadview for two consecutive four-year terms. Now that question is distinguishable from the question that was put on the ballot by the city of Calumet City. It doesn't have the problems that this question has in the sense that they're commingled questions. So this court when it considered Johnson didn't consider anything about commingled questions nor did the Supreme Court when they considered the Johnson v. Ames case. So Johnson v. Ames, while it may be cited for some propositions, is not cited for the commingled ones. That would only be the Coalition for Political Honesty. And the problem in the trial court's ruling in this instance, yes, it is true that the Supreme Court in the Johnson v. Ames case said, well, this is an eligibility requirement, but it's a permissible one because the Constitution says you can do it when it comes to term limits. The difference in the Johnson case is it actually was advancing a term limit. So therefore it was creating an eligibility requirement that was bolstered by constitutional language allowing a government to do that. Here it's creating an eligibility requirement when you take the part of the referendum related to the alderman position that is not a term limit. That's what the problem is. So it's not the same type of eligibility requirement. Johnson v. Ames, the Supreme Court version of it, does not say, does not make the blanket statement that a municipality can create any kind of eligibility requirement if you pass it by a voter-initiated referendum, which is essentially what they're arguing. Here the distinction is that it's the use of the word term limit. And again, you said this was like a complicated web from the beginning, and that's because of that specific term. But I know this court can piece it together because apparently this is the municipal referenda panel, and we would just ask that the question would be found to be improper and that the referendum results would be barred from being implemented again in the future. We're not asking that Gray's Jones be installed in the office of mayor. So we're just asking for a declaration that the referendum is void. Thank you. Thank you. I want to thank counsels for a well-briefed and argued matter, and this court will take it under advisement. Thank you very much.